IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**In re**
**LANDRETH LUMBER COMPANY,**

**Debtor,**

**ROBERT E. EGGMANN, TRUSTEE,**
**LANDRETH LUMBER COMPANY**
**CREDITOR TRUST,**

**Appellant,**
**Cross Appellee,**

**v.**

**MRH CORP.,**

**Appellee,**
**Cross Appellee.**                                                              **No. 10-7-DRH**

## MEMORANDUM AND ORDER

**HERNDON, Chief Judge:**

### I. Introduction and Background

This matter comes before the Court on Appellant Robert E. Eggmann's, Trustee of the Landreth Lumber Company Creditor Trust, appeal from Bankruptcy Court (Doc. 1). After carefully reviewing the pleadings, hearing oral argument and examining the applicable case law, the Court **AFFIRMS** the Bankruptcy Judge's decision.

This matter stems from the bankruptcy proceedings of Landreth Lumber Company. On March 8, 2007 Debtor Landreth filed a Chapter 11 bankruptcy petition and a Trust was created in order to collect Landreth's assets and

distribute the proceeds to its creditors. As part of that proceeding, the Trustee filed a Complaint against Appellee MRH to seek preferential transfers of $25,841.32 paid to MRH, for fuel purchased from MRH's gas station Short Stop Service Station in Bunker Hill, Illinois, within the ninety days proceeding the bankruptcy filing. In its defense, MRH argued that the payments were made in the ordinary course of business as both parties had operated on a handshake agreement whereby MRH provided fuel to Landreth and distributed invoices at the beginning of the month and, in turn, Landreth paid the invoices at the end of the month or the beginning of the following month. MRH alleged that this business relationship had continued, with little deviation, from 1985 until Landreth filed its bankruptcy petition.

On October 5, 2009, a trial was held in Bankruptcy Court. MRH's President, Mike Howald testified that his business operated on a handshake agreement with Landreth and provided fuel which was charged on a monthly basis. He further testified that he extended credit to Landreth without interruption and that Landreth paid the invoices in the same fashion with little deviation. Billie Bauer, MRH's billing clerk, also testified about the business' relationship with Landreth. She also acknowledged that invoices were issued to Landreth at the first of the month and that payment was usually received by the end of the month or the beginning of the next month. Further, she authenticated the invoices presented by MRH. The Trustee did not put on any additional evidence at trial.

After the trial, the parties were instructed to file post-trial briefs. In its closing brief, MRH included Summaries of the invoices and payments which the

Trustee objected to as the inclusion of evidence not presented at trial. While the Bankruptcy Judge granted the motion and disregarded the summaries, the Judge ultimately entered judgment for MRH on its ordinary course of business defense. The Bankruptcy Judge found that:

> the clear, uncontroverted testimony of the Defendant's witnesses establishes that the Defendant corporation supplied fuel for the Debtor's vehicles on credit from 1985 until February 2009. Both the testimony and the documentary evidence, in Defendant's Exhibits Nos. 1 and 2, establish that fuel was supplied to the Debtor on credit with statements being sent to the Debtor in the early part of each month and the Debtor paid each statement in full by the end of the month or early in the following month with little variance through all of the years that the parties did business together. The business practices between the parties did not change during the preference period, and they did not change even after the Debtor filed for relief under Chapter 11 of the Bankruptcy Code. The uncontroverted facts clearly establish that the Defendant was merely facilitating the Debtor's effort to continue doing business and that there was absolutely no indication that the Debtor was affording the Defendant unusual or preferential treatment over other creditors. These uncontroverted facts lead the Court to the clear conclusion that the Defendant has established by a preponderance of the evidence that all payments made during the preference period were in the ordinary course of business between the parties as required by **11 U.S.C. § 547(c)(2)**.

**(Opinion of Judge Gerald D. Fines, *In Re: Landreth Lumber Company*, Case No. 09-3046, November 23, 2009, Doc. 42).**

Thereafter, Trustee/Appellant Eggmann filed a timely Notice of Appeal on the Bankruptcy Judge's decision. Specifically, Appellant appealed the Bankruptcy Court's decision against Eggmann on the Trust's Complaint to recover preferential transfers to MRH Corp. The Bankruptcy Court ultimately found that Appellee MRH had met its burden of proving that the transfers made by Debtor were protected by

the ordinary course of business defense. In Response to Appellant's brief, Appellee MRH Corp., filed a brief arguing that the Bankruptcy Court was correct in its findings regarding its ordinary course of business defense (Doc. 15). Further, and in the alternative, MRH Corp. argued that if the Court found it had not meet its burden on the ordinary course of business defense, that it sought to appeal the Bankruptcy Court's finding that MRH had not met its burden of proof on its position that MRH had furnished new value. Further, Appellee MRH argued that the Bankruptcy Court erred in granting both the Trusts' objection to MRH's President's, Michael Howald, testimony as to the business relationships in the industry and its evidentiary objections to the exhibit summaries presented in its post-trial memo. In response to the parties appeal and cross-appeal, the Court held a hearing on October 21, 2010, in order for the parties to present oral arguments on their appeals.

## II. Analysis

This Court has jurisdiction over bankruptcy appeals pursuant to **28 U.S.C. § 158(a)**. Accordingly, this Court may affirm, modify, or reverse the bankruptcy judge's judgment, order or decree or it may remand with instructions for further proceedings in accordance with the standards that follow. ***See* FED.R.BANKR.P. 8013.**

Here, Appellant argues that the Bankruptcy Court erred in finding that Appellee had carried its burden of proof on its ordinary course of business defense. Specifically, Appellant presents the findings of fact for review, arguing that Appellee

failed to put on any specific evidence to support a pre-preference period course of dealing.

A district court reviewing a bankruptcy court's decision must accept the bankruptcy judge's facts unless the district court determines those findings to be clearly erroneous. *In re Pearson Bros. Co.*, 787 F.2d 1157, 1161 (7th Cir. 1986); FED.R.BANK.P. 8013; *Excalibur Automobile Corp. v. Robinson (In re Excalibur Automobile Corp.)*, 859 F.2d 454, 457 n. 3 (7th Cir. 1988) (citing FED.R.BANK.P. 8013); *In the Matter of Yonikus*, 996 f.2d 866, 868 (7th Cir. 1993) (bankruptcy court's findings of fact reviewed for clear error both by the district court and the appellate court); *Weise v. Community Bank of Cent. Wis.*, 552 F.3d 584, 588 (7th Cir. 2009); *Freeland v. Enodis Corp.*, 540 F.3d 721, 729 (7th Cir. 2008) ("If the bankruptcy court's account of the evidence is plausible in light of the record viewed in its entirety, [the district court] will not reverse its factual findings even if [it] would have weighed the evidence differently" (internal citations omitted)). "A finding is 'clearly erroneous' when 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Kovacs v. United States*, 614 F.3d 666, 672 (7th Cir. 2010) (quoting *Tidwell v. Smith*, 582 F.3d 767, 777 (7th Cir. 2009)); *In re Pearson Bros. Co.*, 787 F.2d at 1162 ("[W]hen a trial judge's finding is based on his decision to credit the testimony of one or two witnesses, each of whom has told a coherent and

**facially plausible story that is not contradicted by the extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error" (quoting** *Anderson v. City of Bessemer City, N.C.*, **470 U.S. 564, 105 S.Ct. 1504, 1512-13, 84 L.Ed.2d 518 (1985))**.

In this case, Appellant argues that the Bankruptcy Court erred in determining that the evidence showed Appellant's transfers to Appellee were in the ordinary course of business. Under the preferential statute, debtors are ordinarily allowed to recover payments made during the ninety days proceeding bankruptcy as a means of preventing preferential treatment to certain creditors. **11 U.S.C. § 547(b).** However, the ordinary course of business exception "is designed to protect recurring customary credit transactions that are received and paid in the ordinary course of the business of the debtor and the debtor's transferee." ***In the matter of Midway Airlines, Inc.*, 69 F.3d 792, 797 (7th Cir. 1995) (quoting** *Energy Coop., Inc. v. SOCAP Int'l, Ltd.*, **832 F.2d 997, 1004 (7th Cir. 1987) (internal citations omitted))**. In order to meet the burden under the ordinary course of business defense, a party must show that a "transfer was in payment of a debt incurred by the debtor in the ordinary course of business...and such transfer was – (A) made in the ordinary course of business or financial affairs of the debtor and transferee; or (B) made according to ordinary business terms." **11 U.S.C. § 547 (c)(2).**

The party asserting the defense must prove each element by a preponderance of the evidence. **11 U.S.C. § 547 (g);** ***In re Leprechaun Trucking,***

***Inc.*, 356 B.R. 190, 199 (C.D. Ill. 2007);** *In the matter of Midway Arlines, Inc.*, **69 F.3d at 797**. In making the determination whether the transfers were in the ordinary course of business, the court must look at the "twelve-month period preceding the preference period." ***In re Leprechaun Trucking*, 356 B.R. at 199- 200**. The Court must also look at numerous factors including:

1. the length of time the parties were engaged in the transactions at issue;
2. whether the amount or form of tender differed from past practices;
3. whether the debtor or creditor engaged in any unusual collection or payment activity; and
4. whether the creditor took advantage of the debtor's deteriorating financial condition.

***Id.* (citing *In re Grand Chevrolet, Inc.*, 25 F.3d 728, 732 (9th Cir. 1994)**.

Here, the Bankruptcy Court found that Appellee had met its burden of proving, by a preponderance of the evidence, that it was entitled to the transfers under the ordinary course of business exception. In doing so, the Bankruptcy Judge noted that the two witnesses provided by Appellee were both credible and their testimony was not controverted by cross-examination or Appellee's exhibits which were consistent with the testimony (**(Opinion,** *In Re: Landreth Lumber Company***, Case No. 07-30466, November 23, 2009, Doc. 42 at p. 2)**. The Bankruptcy Judge also noted in his opinion that the testimony was uncontroverted as Appellant did not put on any witnesses during trial **(*Id.* at p. 4)**. Appellant now claims that the factual evidence was not enough to support the Bankruptcy Court's findings. Appellant points to the statements of Howald, arguing that they were vague, general, and mere

approximations of time of Debtor's payments. Further, Appellant argues that Exhibits 1 and 2 were insufficient to support Appellee's arguments.

However, in reviewing the Opinion of the Bankruptcy Court, the Exhibits, the pleadings, and the arguments of the parties, the Court finds that the Bankruptcy Court's findings were not clearly erroneous. The Bankruptcy Court relied on the two witnesses, the only witnesses presented by either party, which were consistent with each other and uncontroverted by the Appellant. Further, in reviewing the Exhibits the Bankruptcy Court relied on, this Court finds that those exhibits included pre-preference period payments[1] and was consistent with the testimony of the two witnesses. The Exhibits and the testimony, when viewed in its entirety, clearly established that Landreth Lumber and MRH had an ongoing business relationship which allowed Landreth to obtain fuel on credit and pay that fuel off consistently throughout the years and the pre-preference period in a consistent manner, with very little variance. Further, neither the witnesses nor the exhibits show that there was unusual or preferential treatment between the parties, or that MRH took advantage of Landreth's deteriorating financial situation. Instead, the evidence showed that the business relationship remained unchanged eventhough through the preference period. As the evidence was largely uncontroverted and

---

[1] The Court does note that while Appellant's counsel argued that Appellee's summary charts referenced evidence not presented at trial, the Court obtained the original copies of Exhibits 1 & 2 as presented at trial and found that it did include pre-preference period transfers from January 1, 2006, contrary to counsel's position at the Oral Arguments before this Court (Doc. 17). Accordingly, the summary chart presented by Appellee in its closing brief was a summary of the evidence presented at trial.

consistent with other evidence and testimony, the Court finds that the Bankruptcy Court's conclusions and findings were plausible and not clearly erroneous. Therefore, the Court will not overrule the Bankruptcy Court's decision.

The Court further notes that while Appellee has raised three additional issues for the Court's review, the Court finds these issues moot in light of its decision on Appellee's ordinary course of business defense.[2]

### III. Conclusion

Accordingly, the Court **AFFIRMS** the findings and decision of the Bankruptcy Court.

**IT IS SO ORDERED.**

Signed this 29th day of October, 2010.

David R. Herndon
2010.10.29 16:33:39
-05'00'

**Chief Judge
United States District Court**

---

[2] However, as the Court has pointed out, though a moot point, the Court finds that the summaries presented in Appellee's post-trial brief did contain evidence presented at trial.